**Ronald Roscoe Collier OLDHAM,
Plaintiff,**

v.

**Sally CHANDLER–HALFORD,
et al., Defendant.**

No. C 93–0284.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Feb. 21, 1995.

Oldham, pro se.

Kristin Ensign, Asst. Atty. Gen., for defendants.

## MEMORANDUM OPINION AND ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND .........................................1343
II. THE MOTION FOR AN INJUNCTION .................................1346
 A. Purpose Of And Standards For Preliminary Injunctions..................1346
 B. Preliminary Injunctions In § 1983 Cases................................1347
 C. Oldham's Application For Injunctive Relief..............................1348
III. STANDARDS FOR SUMMARY JUDGMENT .............................1348
IV. FINDINGS OF FACT ...............................................1350
 A. Undisputed Facts ...............................................1350
 B. Disputed Facts .................................................1351
V. LEGAL ANALYSIS .................................................1351
 A. The Fourteenth Amendment Claim ...............................1351
 1. Property Interest ...........................................1352
 2. Liberty Interest.............................................1352
 B. Eighth Amendment Claims .......................................1353
 1. Deliberate Indifference To A Serious Medical Need....................1354
 2. Deliberate Indifference To A Risk Of Harm ........................1355
 C. Respondeat Superior Liability..................................1356
 D. Failure To Designate An Expert................................1357
VI. CONCLUSION .....................................................1357

Plaintiff, a prisoner in the Iowa Department of Corrections system, has moved for partial summary judgment in his lawsuit pursuant to 42 U.S.C. § 1983 against prison officials. The claims encompassed in the prisoner's motion for partial summary judgment allege deliberate indifference to a serious medical condition and a substantial risk of harm in violation of the Eighth Amendment, asserting that defendants caused the prisoner to reinjure a previously broken wrist when they assigned him to an upper bunk despite a medical restriction on his activities. Defendants, various prison officials and corrections officers, have cross-moved for partial summary judgment on the ground that certain of the officials cannot be held liable on a claim based on *respondeat superior*, and on the ground that there was no deliberate indifference or cruel and unusual punishment involved in the circumstances alleged by the prisoner. The prisoner also seeks a restraining order and preliminary injunction protecting his legal materials during his transfers within the correctional system and preventing alleged interference with delivery of his legal mail to his attorney and the court in violation of the First Amendment.

## I. PROCEDURAL BACKGROUND

On November 5, 1993, plaintiff Ronald Roscoe Collier Oldham filed an application to proceed *in forma pauperis*. That application was granted on November 24, 1993, and Oldham's lawsuit pursuant to 42 U.S.C. § 1983, alleging various violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, was filed that day. Oldham filed an amended complaint on December 2, 1993. Defendants are Sally Chandler–Halford, the director of corrections for the state of Iowa, John Thalacker, the warden of the Iowa Mens Reformatory (IMR) at Anamosa, Iowa, lieutenants Terryl Richardson and Larry Farrington, and correctional officers "Copper," who was never identified or served, Gregory Jones, Sr., Keith Kirchner, and John Linvell, Jr., all at the IMR.

Neither the complaint nor either party's motion for summary judgment is a model of lucid pleading or argument. The amended complaint alleges five causes of action arising from two incidents during Oldham's incarceration at the IMR. Causes of action one, two, three, and five arise from Oldham's assignment on April 16, 1993, to a top bunk. According to the complaint, Oldham had previously fractured his left wrist, and conse-

quently had a medical restriction on his activities. Despite this restriction, the complaint alleges, Oldham was assigned to the top bunk of a set of three, and, as a result, Oldham reinjured his wrist on May 23, 1993, while attempting to climb into his bunk.

Oldham's first claim, denominated "Malicious Indifference," alleges that IMR officers displayed deliberate indifference to Oldham's serious medical condition in violation of the Eighth and Fourteenth Amendments. This claim alleges that defendants violated Oldham's rights when they assigned him to the top bunk on April 16, 1993, despite the doctor's restrictions on his activities, thus causing the reinjury to Oldham's wrist. Oldham's second claim, "Failure to Fallow [sic] Doctors Orders," asserts that the decision of the IMR officers to assign him to an upper bunk despite his medical restriction also constituted another violation of Oldham's Eighth and Fourteenth Amendment rights. This claim alleges that Oldham had made the medical restriction known to the prison officials who made the bunk assignment by showing them a copy of the restriction. The third claim, "Clausing [sic] an Injury," asserts that the assignment to an upper bunk was the cause of Oldham's reinjury to his wrist, and yet another violation of Oldham's Eighth and Fourteenth Amendment rights. Oldham's fifth claim, and the last arising from his assignment to an upper bunk, asserts a "Fourteenth Amendment" claim of "Cruel and Unusell [sic] Punishment," in the

form of placing a "person in danger where that person is likely to get hurt."

In light of Oldham's *pro se* status at the time this complaint was filed,[1] the court believes that it can and should construe these four causes of action as two claims alleging violation of the Eighth Amendment's prohibition against cruel and unusual punishment, and a third claim alleging violation of the Fourteenth Amendment's due process clause.[2] Oldham's first through third causes of action are essentially redundant statements of a single Eighth Amendment claim of deliberate indifference to a serious medical condition, and shall be so construed as Count I. Oldham's fifth cause of action, on the other hand, asserts a different form of Eighth Amendment violation, this time alleging deliberate indifference to a substantial risk of harm to an inmate, although such claims are more frequently encountered in situations where prison officials are alleged to have failed to protect an inmate from violence perpetrated by other inmates or excessive force used by prison officials. *See Farmer v. Brennan,* —— U.S. ——, —— ——, 114 S.Ct. 1970, 1976–77, 128 L.Ed.2d 811 (1994) (Eighth Amendment also requires "reasonable measures to guarantee safety of inmates," including safety from violence at the hands of other inmates); *Helling v. McKinney,* —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (concluding that "the health risk posed by involuntary exposure of a prison inmate to environmental tobacco smoke (ETS) can form the basis of a

---

1. Counsel appeared on behalf of Oldham on July 13, 1994.

2. A *pro se* complaint must be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*); *Smith v. St. Bernards Regional Medical Ctr.,* 19 F.3d 1254, 1255 (8th Cir.1994) (citing *Haines*); *United States v. Woodall,* 12 F.3d 791, 794 n. 1 (8th Cir.1993) ("[plaintiff's] *pro se* pleading should be liberally construed as seeking to invoke the proper remedy," citing *Haines*); *Webster v. Gibson,* 913 F.2d 510, 514 (8th Cir.1990) (citing *Haines* and *Taylor v. Gibson,* 529 F.2d 709, 713–14 (5th Cir.1976) (section 1983 action)); *Wallace v. Lockhart,* 701 F.2d 719, 727 (8th Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). This liberal construction rule allows courts to reach the merits of issues suggested by inartful pleadings. *See Green v. Norris,* 12 F.3d 821, 823 (8th Cir.1993) (magistrate judge and

state appellate court properly reached the merits of inartfully pleaded *pro se* claim of ineffective assistance of counsel). The Eighth Circuit Court of Appeals has used this liberal construction rule to prevent hypertechnical attacks on *pro se* pleadings. *See, e.g., Vick v. Lockhart,* 952 F.2d 999, 1002 (8th Cir.1991) (appellate court reminded counsel for state of this liberal construction rule for *pro se* pleadings at oral arguments on an inmate's *habeas corpus* petition, prompting the state to concede that the inmate's *Doyle* claim, characterized in the pleadings as "prosecutorial misconduct," was nonetheless properly before the court).

However, the liberal construction afforded *pro se* pleadings is limited by reasonableness: defendants must be given fair notice of the claims so that they may make a meaningful response to the pleadings. *Miles v. Ertl Co.,* 722 F.2d 434, 434–35 (8th Cir.1983) (*per curiam*).

claim for relief under the Eighth Amendment."). This cause of action shall be construed as Count II.

Oldham's pleadings admittedly offer little explanation of the basis for Fourteenth Amendment claims apart from stating that the claims in each of his causes of action one, two, three, and five are based on that amendment.[3] However, reading the complaint liberally, the court concludes that Oldham was attempting to assert that he had a property or liberty interest in a lower bunk as the result of the medical restriction placed on his activity by his doctor and that he was deprived of that interest without the due process guaranteed by the Fourteenth Amendment.[4] The court will therefore construe Oldham's first, second, third, and fifth causes of action as also stating, as Count III, a claim for violation of Oldham's Fourteenth Amendment rights to due process.[5]

Oldham's fourth claim arises from a different incident or series of incidents in September of 1993 in which he was denied Tylenol prescribed by another doctor for preoperative pain preceding surgery on Oldham's face. Oldham alleges not only that he was denied the prescribed medication, but that the correctional officers he approached refused to allow him to discuss the problem with their superior officer, and that one officer taunted him to sue her for refusing to give him the medication. In this claim, Old-

ham asserts deliberate indifference to a serious medical condition in violation of his Eighth and Fourteenth Amendment rights. The court will construe this to be Count IV of Oldham's complaint.

Thus, as the court has construed the complaint, it involves four counts. Count I (formerly Oldham's causes of action one, two, and three) alleges violation of Oldham's Eighth Amendment rights in the deliberate indifference of defendants to Oldham's serious medical condition, causing reinjury to Oldham's wrist on May 23, 1994, by assigning Oldham a top bunk on April 16, 1993, despite a doctor's order for restrictions on Oldham's activities. Count II (formerly Oldham's fifth cause of action) alleges that in assigning Oldham a top bunk on April 16, 1993, defendants were deliberately indifferent to a substantial risk of harm to Oldham in violation of the Eighth Amendment. Count III (formerly Oldham's "Fourteenth Amendment" allegations in his causes of action one, two, three, and five) asserts violation of Oldham's due process rights under the Fourteenth Amendment by depriving him of his property or liberty interest in a lower bunk. Count IV (formerly Oldham's fourth cause of action) alleges deliberate indifference to a serious medical condition for refusal of defendants to provide Oldham with prescribed medication during September of 1993.[6]

3. Indeed, the fifth cause of action identifies only the Fourteenth Amendment as the source of the rights violated by the alleged "Cruel and Unusell [sic] Punishment," but the claim is patently one of violation of the Eighth Amendment.

4. This reading is plausible, because of the frequency with which Oldham refers to the medical restriction as requiring assignment to a lower bunk or making defendants' assignment of an upper bunk improper. Oldham's frequent identification of the "14th Amendment" as the basis for his claims provided adequate notice to defendants that they should look for the basis for such a claim in the facts alleged, or, at the very least, should have prompted them to argue that there was no factual or legal basis for a Fourteenth Amendment claim. Defendants ignored the references to the Fourteenth Amendment in the *pro se* pleadings at their peril. However, the court's disposition of the Fourteenth Amendment claims demonstrates that no prejudice to defendants resulted from their failure to argue, or possibly failure to recognize, any Fourteenth Amendment

claims despite the inartful pleading of such claims.

5. The court cannot read the complaint so broadly as to find that it attempts to state a claim of violation of the Fourteenth Amendment right to equal protection.

6. By order dated June 28, 1994, this matter was consolidated with another involving similar allegations filed by Oldham with an application to proceed *in forma pauperis* on May 18, 1994, and designated C94–0158. The second complaint, which names as defendants Chandler–Halford, Thalacker, and new defendants correctional officers Mark Gossesman and Owen Butte, also at the IMR, alleges deliberate indifference to Oldham's medical needs, failure to follow doctor's orders, and cruel and unusual punishment arising from a fall suffered by Oldham on April 4, 1994, in the kitchen at the IMR in which he allegedly injured his left wrist yet again, and subsequent interference with Oldham's attempts to get medical treatment. The claims in the

Defendants answered Oldham's amended complaint on February 2, 1994. On April 28, 1994, Oldham filed a motion for partial summary judgment, which the court construes to pertain to all of the claims arising from his assignment to an upper bunk on April 16, 1993 (i.e., Counts I, II, and III, or Oldham's claims one, two, three, and five). Oldham's motion asserts that there is no genuine issue of material fact as to these claims and that he is entitled to judgment as a matter of law on each of them. Defendants filed a resistance to Oldham's motion and a cross-motion for partial summary judgment on May 10, 1994. Defendants seek summary judgment in favor of defendants Halford, Thalacker, and Farrington, on the ground that only *respondeat superior* liability is asserted against them on any of Oldham's claims, and such liability is not cognizable under 42 U.S.C. § 1983. As a further ground, defendants assert that the undisputed facts do not show deliberate indifference to Oldham's medical needs. Rather, defendants argue that correctional officers are required to follow a limited activity notice, and that they were without authority to make a determination as to the level of bunk to which Oldham should have been assigned. Defendants also assert that Oldham has failed to support his claims of deliberate indifference with expert medical testimony. Finally, defendants have moved for partial summary judgment on Count IV (Oldham's fourth claim) to the extent that defendants argue Oldham has failed to allege any basis for liability for certain of the defendants. Defendants do not appear to have addressed Oldham's motion for summary judgment as to a Fourteenth Amendment violation, nor have they moved for summary judgment in their favor on such a claim.

At some point, Oldham was transferred to the Iowa Department of Corrections facility at Mount Pleasant, Iowa. In the process, Oldham asserts that some of his legal materials, properly marked "legal material," were lost by IMR officials. Oldham also asserts that legal mail he placed in the out-going mail box was never received by the addressees, his attorney and the court, and that

consolidated complaint from case No. C94–0158 are not involved in the present motions for summary judgment.

therefore IMR officials interfered with his out-going legal mail. Oldham filed a *pro se* motion for a restraining order or injunction on August 12, 1994, to prevent search and loss of his legal materials and interference with his outgoing legal mail. Defendants resisted the motion for a restraining order and injunction on August 23, 1994, asserting a failure of proof that any legal materials were lost or interfered with by IMR officials. The court will dispose of the motion for a restraining order and preliminary injunction first, then turn to disposition of the motions for summary judgment.

## II. THE MOTION FOR AN INJUNCTION

### A. Purpose Of And Standards For Preliminary Injunctions

■ The Eighth Circuit Court of Appeals has recognized that the purpose of issuing a preliminary injunction in a lawsuit is to preserve the status quo and to prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. *Devose v. Harrington*, 42 F.3d 470 (8th Cir.1994) (*per curiam*) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir.1981) (*en banc*)); *Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir.1993); *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789–90 (8th Cir. 1989); *Ferry–Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir.1984). The court therefore requires as a first step the establishment of a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. *Devose*, 42 F.3d at 471.

■ The Eighth Circuit Court of Appeals has repeatedly cited the standards stated in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir.1981) (*en banc*), as the basis on which courts in this circuit are to determine whether or not to issue a preliminary injunction. *See, e.g., In re Y & A Group Sec. Litigation*, 38 F.3d 380, 383 (8th Cir.1994); *Baker Elec. Co-op., Inc. v.*

*Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 556 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994); *Aziz v. Moore,* 8 F.3d 13, 15 (8th Cir.1993); *Sanborn Mfg.,* 997 F.2d at 485–86; *Aswegan v. Henry,* 981 F.2d 313, 314 (8th Cir.1992); *Frank B. Hall & Co. v. Alexander & Alexander, Inc.,* 974 F.2d 1020, 1023 (8th Cir.1992); *Cellular Sales, Inc. v. Mackay,* 942 F.2d 483, 485 (8th Cir.1991); *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 369 (8th Cir. 1991); *Tullos v. Parks,* 915 F.2d 1192, 1193 (8th Cir.1990). The most recent formulation of the *Dataphase* standards is as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Sys., Inc. v. C L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) *(en banc).* We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 556 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

*Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 929 (8th Cir.1994); *Timber Lake,* 10 F.3d at 556 (review is for abuse of discretion or erroneous legal premise); *Aswegan,* 981 F.2d at 314 (abuse of discretion or erroneous legal premise review); *Frank B. Hall,* 974 F.2d at 1023 (same); *Tullos,* 915 F.2d at 1196. The burden of establishing the propriety of a preliminary injunction is on the movant, here Oldham. *Baker Elec. Co-op.,* 28 F.3d at 1472; *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 737 (8th Cir.1989) *(en banc).* The movant's burden is particularly heavy in those cases where granting the preliminary injunction will give that party substantially the relief it would obtain after a full trial on the merits. *Sanborn Mfg.,* 997 F.2d at 496 (citing *Dakota*

*Indus., Inc. v. Ever Best Ltd.,* 944 F.2d 438, 440 (8th Cir.1991) (hereinafter *Ever Best* )).

"No single [*Dataphase* ] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op.,* 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir.1987) (hereinafter *Lenox Labs.*), and also citing *Dataphase*); *Sanborn Mfg.,* 997 F.2d at 486 (citing *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 667 (8th Cir.1987) (hereinafter *Parfums de Coeur* )); *Sanborn Mfg.,* 997 F.2d at 486 (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 988 F.2d 61, 64 (8th Cir.1993) (hereinafter *Dakota Indus.*)); *Frank B. Hall,* 974 F.2d at 1023; *see also In re Y & L,* 38 F.3d at 383 (focusing on appeal in that case on court's determination of likelihood of success on the merits); *ILQ Inv., Inc. v. City of Rochester,* 25 F.3d 1413, 1416 (8th Cir.) (focus on appeal also success on merits), *cert. denied,* —— U.S. ——, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994); *S & M Constructors, Inc. v. Foley Co.,* 959 F.2d 97, 98 (8th Cir.) (district court applied only one of the *Dataphase* factors, likelihood of success on the merits, but the appellate court applied all of the *Dataphase* factors on appeal while noting that likelihood of success on the merits was the most significant under the circumstances), *cert. denied,* —— U.S. ——, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992); *James River Flood Control Ass'n v. Watt,* 680 F.2d 543, 544–45 (8th Cir.1982) *(per curiam )* (court must apply all of *Dataphase* factors).

### B. Preliminary Injunctions In § 1983 Cases

The Eighth Circuit Court of Appeals recently stated the standards for issuance of an injunction in a § 1983 action:

> An injunction must be tailored to remedy the specific harm shown.... Furthermore, title 42 U.S.C. § 1983, the title under which this action was brought, requires *inter alia* that, in order for liability to ensue, a person must be subjected to a deprivation of ... rights ... secured by the constitution and laws....

*Falls v. Nesbitt,* 966 F.2d 375, 380 (8th Cir. 1992) (quoting *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir.1982)). Where there is no constitutional violation, there is no necessity for injunctive relief. *Id.* Furthermore, a prisoner's claim for injunctive relief is moot if the prisoner is no longer subject to the conditions of which he complained. *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).

### C. Oldham's Application For Injunctive Relief

■ Oldham has complained that an injunction is necessary to protect him from interference with his legal materials and access to his attorney and the courts. Plainly, such interference rises to the level of a constitutional violation. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496–97, 52 L.Ed.2d 72 (1977) (only reasonable restrictions may be placed upon the right of access to the courts); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (right of access to the courts includes reasonable access to attorney); *Jones v. James,* 38 F.3d 943 (8th Cir. 1994) (right of access to the courts includes reasonable opportunity to seek and receive assistance of attorneys). Nor can the court consider Oldham's application for injunctive relief moot, because Oldham remains in the Iowa correctional system, and may be transferred at any time to another facility within that system.

■ However, application of the *Dataphase* factors to this case indicates that issuance of an injunction would be inappropriate. Oldham's complete lack of any proof of the loss of any legal material, apart from his bald assertion of such loss, does not bode well for his success on the merits. Furthermore, the fact that his attorney and the courts did not receive certain materials allegedly mailed to them does not establish either that such materials were actually mailed or that IMR officials interfered with that mailing. Although interference with legal materials and access to the court would assuredly show a

threat of irreparable harm, Oldham has not shown, except by bald assertion, that he was subjected to such interference. The court finds that the balance of harms in this case weighs in favor of not issuing an injunction, largely because the IMR has in place proper policies for the protection of an inmate's legal mail and access to the courts, and this court has with some frequency reminded IMR officials of the importance of adherence to these policies. Although the public interest involved here is plainly enshrined in the constitutional right of access to the courts, the court does not believe that the public interest will be served by an injunction in the circumstances alleged here, because that interest is already addressed by prison system regulations.

Nothing in this conclusion should lead anyone in the Iowa Department of Corrections to believe that the court is willing to tolerate actions that depart from established policies for the protection of inmates' legal materials, legal mail, and access to the courts. With sufficient showing of likelihood of success on the merits, particularly where a inmate was able to show with credible evidence that legal materials were lost in a transfer, this court would not hesitate to entertain a claim of violation of constitutional rights brought pursuant to § 1983. Courts of this district and circuit have subjected IMR legal mail policies, policies concerning search of legal materials, and policies on access to the courts to careful scrutiny in the past and will likely do so again. The court concludes only that the allegations here are insufficiently supported to justify injunctive relief.[7]

Finding that Oldham's motion for injunctive relief must be denied, the court turns to consideration of the parties' cross-motions for partial summary judgment.

### III. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from ju-

---

7. The court finds some merit in Oldham's suggestion that legal materials be inventoried, or at least sealed, prior to transferring an inmate.

ries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule* 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the* moving party is entitled to judgment as a matter of law.

*Fed.R.Civ.P.* 56(a), (b), & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[8] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). The moving party is not required by *Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is

---

8. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106

S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the parties' motions for summary judgment.

## IV. FINDINGS OF FACT

### A. Undisputed Facts

The parties concentrate their arguments in favor of their own motions for summary judgment and in opposition to their opponent's upon whether each is entitled to judgment as a matter of law, rather than upon factual disputes or the lack thereof. Both parties point to a rather limited body of facts as relevant to disposition of this matter.

On April 16, 1993, Oldham was first assigned to Living Unit B (LUB) at the IMR. At some time prior to that date, Oldham had suffered a serious fracture to his left wrist, and a Dr. Steyers had placed a medical restriction on Oldham's activities as a result of that injury. However, Oldham was assigned a top bunk in his cell in LUB on April 16, 1993. Oldham complained about this assignment, and, upon the request of the correctional officers present, provided them with a copy of the medical restriction.[9] Nonetheless, defendants Jones and Richardson found nothing in the activity restriction that required them to assign Oldham to a lower bunk. Oldham's assignment was not changed.

On May 23, 1993, while attempting to climb into his upper level bunk, Oldham heard a "pop" in his left wrist, and suffered

---

9. Throughout his complaint, Oldham asserts that this restriction included a prohibition on his lifting anything weighing over 5 lbs. Although it is not a material issue, the court finds nothing in the record showing a restriction on lifting anything weighing under 10 lbs.

attendant pain. Oldham therefore sought medical attention, believing that he had reinjured his left wrist. The medical records appended to defendants' statement of material facts show that Oldham was subsequently evaluated and treated for a possible refracture of his left wrist and pain arising from it.

### B. Disputed Facts

■ The one factual dispute the parties argue is critical is whether or not the medical restriction on Oldham's activities stated or otherwise required that Oldham be assigned to a lower bunk. The court finds that it did not.[10]

The "Limited Activity Notice" for Oldham, put in place March 11, 1993, by Health Services Staff of the Iowa Department of Corrections,[11] to remain in effect until June 11, 1993, places the following restrictions on Oldham's activities: Oldham was restricted from physical activity including sports (basketball, volleyball, softball, dodgeball, jogging, running, football, ping pong), weight lifting, and aerobics; he was allowed to have a brace; and he was designated as unable to work his regularly scheduled assignment, but was allowed to pursue "sedentary work only (10 lbs. max.)." Defendants' Exhibit A, p. 1, Defendants' Statement of Material Facts. Although the Limited Activity Notice includes an option requiring "lower bunk only," that option is not marked. *Id.* A similar notice was put in place on May 24, 1993, for one month, by Health Service Staff member Hochstetler, following Oldham's reinjury of his left wrist. *Id.* at 2. That notice does not include the bed assignment line, but includes the same restrictions as the prior notice, with the exception that the work restriction has been changed by a hand-written note that Oldham "May work w R hand. May wipe tables." *Id.* In none of the subsequent limited activity notices is Oldham restricted to assignment to a lower bunk, although each includes a restriction as to Oldham's use of his left hand to lift anything weighing more than ten pounds. *Id.*[12]

### V. LEGAL ANALYSIS

The court will take up the parties' respective motions for summary judgment as to claims arising out of Oldham's assignment to a top bunk on April 16, 1993, and subsequent injury on May 23, 1993, first, *i.e.,* Oldham's Counts I, II, and III, as construed by the court. Then the court will consider defendants' motion for summary judgment on the ground of an improper assertion of *respondeat superior* liability as to Oldham's claims arising from the events in September of 1993 (Count IV as construed by the court).

■ To establish a valid § 1983 claim of violation of federal constitutional rights, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and "that the conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution." *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir.1993) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). Oldham has asserted that the conduct of defendants deprived him of his due process rights under the Fourteenth Amendment, and also his rights under the Eighth Amendment. The court turns to Oldham's Fourteenth Amendment due process claim first.

### A. The Fourteenth Amendment Claim

■ Due process claims are generally subjected to a two-part analysis: (1) is the

---

10. Defendants have included in support of their motion for summary judgment an affidavit from Dr. Paul L. Loeffelholz, the medical director of the Iowa Department of Corrections, to the effect that correctional officers are not authorized to make medical determinations and must follow the limited activity notices prepared by the health services staff for particular inmates. While this may be the policy, the court does not find it in any way dispositive of the present matter.

11. The signature on this Limited Activity Notice is illegible.

12. Oldham's present lawsuit does not attempt to state a claim against any medical staff member for failure to include a limitation on his assignment to a lower bunk only in these Limited Activity Notices.

**1352**

asserted interest protected by the due process clause; and (2) if so, what process is due. *Sanders v. Woodruff,* 908 F.2d 310, 312 (8th Cir.1990); *Tyler v. Black,* 811 F.2d 424, 427 (8th Cir.1987), *adopted in relevant part,* 865 F.2d 181 (8th Cir.1987) (*en banc* ), *cert. denied,* 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989). Protectable interests include a plaintiff's property or liberty interests. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985) (The Fourteenth Amendment's Due Process Clause protects life, liberty, and property); *Miller v. Lovell,* 14 F.3d 20, 21 (8th Cir.1994) ("Procedural due process requirements only apply, however, to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty").

### 1. Property Interest

Property interests protected by due process are "defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975). *See also Regents of the Univ. of Michigan v. Ewing,* 474 U.S. 214, 222 n. 7, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985); *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 864 (8th Cir.1993) ("The existence of a property interest must be determined with reference to state law."); *Packett v. Stenberg,* 969 F.2d 721, 725 (8th Cir.1992) (same); *Lohorn v. Michal,* 913 F.2d 327, 335 (7th Cir.1990); *Skeets v. Johnson,* 805 F.2d 767, 777 (8th Cir.1986) (property interests are defined by independent sources such as state law). Oldham appears to assert that the medical restrictions placed on his activity established his property interest in assignment to a lower bunk.

■ Even assuming a medical restriction on an inmate's activity could establish a property interest, the court finds that the medical restrictions in this case do not establish the asserted property interest. Specifically, no medical restriction in the summary judgment record even addresses Oldham's assignment to a particular level bunk. Although most of the medical restrictions include a line where a specific bunk assignment could have been required for medical reasons, the "lower bunk only" assignment was never marked on these medical restrictions. Therefore, Oldham has failed to establish a property interest in his assignment to a lower bunk, and the court need not reach the issue of what process might have been due as the result of deprivation of such an interest.

### 2. Liberty Interest

■ The United States Supreme Court has "repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1982). A state creates a protected liberty interest by placing substantive limitations on official discretion. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989); *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983). The most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decision-making, *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met. *Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909–10. A state statute or regulation creates a liberty interest if it uses mandatory language in connection with particularized substantive standards or criteria that significantly guide administrative decisions. *Clark v. Groose,* 36 F.3d 770, 772 (8th Cir.1994) (*en banc* ); *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir. 1994); *Knight v. Armontrout,* 878 F.2d 1093, 1095 (8th Cir.1989) (where regulations contain "particularized substantive standards or criteria to guide the exercise of discretion by [jail] officials," and contain language of a mandatory nature, *e.g.,* shall, will, must, a liberty interest is created which cannot be taken away without due process, citing *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct.

864, 871–72, 74 L.Ed.2d 675 (1983), and *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir.1985)).

■ The Eighth Circuit Court of Appeals has formulated the *Thompson* test as follows: State laws and regulations create a protectable liberty interest only when they (1) "place substantive limitations on the exercise of official discretion;" and (2) contain " 'explicit mandatory language' " comprising " 'specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow.' "

*Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993) (citing *Patchette v. Nix*, 952 F.2d 158, 160 (8th Cir.1991), and *Thompson*, 490 U.S. at 46[2] ), 109 S.Ct. at 1909–10; *see also Bagley v. Rogerson*, 5 F.3d 325, 327 (8th Cir.1993) ("It is commonly said that no liberty interest of this kind is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials."); *Dace v. Mickelson*, 816 F.2d 1277 (8th Cir. 1987) (*en banc;* applying same test). Even if a state regulation raises a protected liberty interest, the court's inquiry is not whether the regulation and therefore the Constitution is violated, but whether the process afforded the inmate satisfied the minimum requirements of the Due Process clause. *Griffin–El v. Delo*, 34 F.3d 602, 604 (8th Cir.1994).

■ Again, even assuming that the medical restrictions could establish a liberty interest, the court must conclude that Oldham has failed to establish a liberty interest in his assignment to a lower bunk, because nowhere in the medical restrictions can the court find any mandatory, or any language at all, regarding Oldham's assignment to a particular level bunk. Thus, the medical restrictions do not place any limitations on the discretion of prison officials in assigning Oldham to a particular level bunk.

■ The court concludes that Oldham's Fourteenth Amendment claims fail *ab initio* because Oldham cannot establish any liberty or property interests in his assignment to a particular level bunk upon which to mount such a claim. The court notes further that Oldham has not pleaded that he was a pre-trial detainee, which would provide a ground for bringing his "cruel and unusual punishment" claims pursuant to the Fourteenth Amendment rather than pursuant to the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 1871–72 & n. 16, 60 L.Ed.2d 447 (1979) (pre-trial detainee's claims of cruel and unusual punishment must be brought pursuant to the Fourteenth Amendment due process clause, not the Eighth Amendment); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir.1994) (pre-trial detainee's conditions of confinement claim is brought pursuant to the due process clause of the Fourteenth Amendment, citing *Bell* ): *Whitnack v. Douglas County, Nebraska*, 16 F.3d 954, 957 (8th Cir.1994) (a pre-trial detainee's cruel and unusual punishment claim is brought pursuant to the Fourteenth Amendment); *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir.1993) (same); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir.1993) (same); *Campbell v. Cauthron*, 623 F.2d 503, 505 (8th Cir.1980) (same). However, in this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims of cruel and unusual punishment have been the same, both requiring "deliberate indifference" on the part of defendants. *Hall*, 34 F.3d at 650; *Whitnack*, 16 F.3d at 957. Thus, even if Oldham could bring his cruel and unusual punishment claims pursuant to the Fourteenth Amendment, the court's analysis of those claims would be the same as follows under the Eighth Amendment.

### B. Eighth Amendment Claims

■ The Eighth Amendment places a duty on prison officials to provide humane conditions of confinement. *Weaver v. Clarke*, 45 F.3d 1253 (8th Cir.1995) (citing *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)). Adequate medical attention is one of the conditions of confinement to which a prisoner is subjected, *id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991)), and in this context, "a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of

serious future harm." *Id.* (comparing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (existing medical needs), with *Helling v. McKinney*, —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (risk of future harm to health)).

The Eighth Circuit Court of Appeals recently stated the standards for an Eighth Amendment violation as follows:

> A prison official violates the Eighth Amendment when two conditions are met: 1) the deprivation alleged is sufficiently serious—the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities; and 2) the prison official acts with "deliberate indifference"—he knows of and disregards an excessive risk to inmate health and safety. [*Farmer*, —— U.S.] at ——, ——, 114 S.Ct. at 1977, 1979.

*Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994). With these standards in mind, the court turns to analysis of Oldham's Eighth Amendment claims.

### 1. Deliberate Indifference To A Serious Medical Need

The United States Supreme Court has said that "[s]ince ... only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (Emphasis in the original; citations omitted); *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). A medical condition does not need to be an emergency in order to be considered serious under *Estelle*. *Ellis v. Butler*, 890 F.2d 1001, 1003 n. 1 (8th Cir.1989). The Eighth Circuit approved definition of a "serious medical need" as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1992).

"Deliberate indifference" is the standard for the requisite state of mind of the defendant for claims of denial of medical care in violation of the Eighth Amendment. *Helling v. McKinney*, —— U.S. ——, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Indifference is apathy or unconcern. *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797 (8th Cir.1991). "Deliberate indifference" to a prisoner's serious illness or injury can typically be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff or other inmates. *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1985). Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–105, 97 S.Ct. at 291; *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456–57 (8th Cir.1993). In the present case, the defendants were IMR correctional officers and corrections department officials, not doctors, but Oldham alleges that they interfered with his medical treatment by failing to follow a doctor's orders. Thus, his claim is cognizable as an alleged violation of the Eighth Amendment under *Estelle*.

The courts have not delineated specific criteria for what constitutes "deliberate indifference," but have instead examined the specific circumstances involved. *See, e.g., Foulks v. Cole County, Mo.*, 991 F.2d 454, 456–57 (8th Cir.1993) (delay of several days in treatment of bleeding and bruised prisoner raised a fact issue as to whether defendants had acted with deliberate indifference); *Johnson v. Lockhart*, 941 F.2d 705, 706–07 (8th Cir.1991) (persistent delay in priority surgery was "deliberate indifference"); *Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir.1991) (no treatment available for sexual psychopath so no "deliberate indifference" to condition); *DeGidio v. Pung*, 920 F.2d 525, 532–33 (8th Cir.1990) (systematic failure to respond to tuberculosis outbreak was deliberate indifference); *Toombs v. Bell*, 798 F.2d

297, 298 (8th Cir.1986) (delay, coupled with disparaging treatment of complaints, held to be "deliberate indifference"), *but see Mills v. Smith,* 656 F.2d 337, 339–40 (8th Cir.1981) (brief delay is not deliberate indifference).

 The court has no difficulty concluding that a recently fractured wrist still in a brace or bandage and still requiring some restrictions on activities is a serious medical need apparent even to a layperson. However, the most serious impediment to Oldham's Eighth Amendment claim is much the same as the impediment to his Fourteenth Amendment claims: the medical restriction upon which he bases his claim simply does not state that Oldham should be assigned a lower bunk. Although common sense might have suggested that a person with an arm in a brace or bandage might have difficulty climbing into a top bunk, common sense, perhaps unfortunately, is not the legal standard for an Eighth Amendment violation. The defendants in this case were not apathetic and unconcerned in their response to Oldham's requests for a lower bunk. Instead, they asked for evidence of some authorization that a lower bunk was required for treatment of his medical condition. They examined the copy of the medical restriction provided to them by Oldham, and, because that restriction does not prescribe a lower bunk as part of Oldham's treatment, found nothing that required them to assign Oldham to a lower bunk. The court may fault defendants' judgment in assigning Oldham to a top bunk despite the medical restriction, but it cannot find that defendants' conduct constituted deliberate indifference to a serious medical need in violation of the Eighth Amendment in light of the applicable standards.

### 2. Deliberate Indifference To A Risk Of Harm

 The Supreme Court recently noted that it was no novel proposition that the Eighth Amendment protects prison inmates against future harm:

The Amendment, as we have said, requires that inmates be furnished with basic human needs, one of which is "reasonable safety." *DeShaney [v. Winnebago County Dep't of Social Serv.],* 489 U.S. [189], 200, 109 S.Ct. [998], 1005 [103 L.Ed.2d 249] [ (1989) ]. It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Youngberg v. Romeo,* 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458, 73 L.Ed.2d 28 (1982).... The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event.

*Helling,* —— U.S. at ——, 113 S.Ct. at 2480–81. Thus, for a claim based on a failure to prevent harm, "the inmate must show that ... [the] condition pos[ed] a substantial risk of serious harm." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977; *Baker v. Delo,* 38 F.3d 1024, 1027 (8th Cir.1994) (quoting *Farmer*). The prisoner must also prove that the prison official whose conduct is alleged to have violated the Eighth Amendment had "a 'sufficiently culpable state of mind,'" *id.; Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323, that is, "that the prison official 'acted or failed to act despite his [actual] knowledge of a substantial risk of serious harm.'" *Baker,* 38 F.3d at 1027 (quoting *Farmer,* —— U.S. at ——, ——, 114 S.Ct. at 1981, 1984).

 The court concludes that whether prison officials were deliberately indifferent to a substantial risk of serious harm, although perhaps a closer question than whether they were deliberately indifferent to Oldham's serious medical need, must still be answered in the negative. The difference between the claims, it appears to the court, is whether, in a risk of harm claim, defendants looking ahead have actual knowledge of a substantial risk of harm, requiring them to forestall the risk of harm by some action, as opposed to looking only at the present circumstances to decide if some action is required on their part. In the present case, although common sense again might suggest that an inmate with an injured arm could eventually reinjure that arm while attempting to climb into a top bunk, the court cannot conclude on the record before it that there is even a genuine issue of material fact that prison officials had actual knowledge of such a risk of harm. Nothing in the medical restriction put them on notice that a lower bunk was required to prevent future injury, and the fact that Oldham did eventually rein-

jure himself while climbing into the top bunk provides only perfect hindsight. The situation might be different if a defendant alleges that despite prior injuries while attempting to get into a top bunk or a specific medical restriction requiring assignment to a lower bunk, he was still assigned to a top bunk, and the unfortunate circumstances leading to an injury were repeated.[13] However, in the present case, the court concludes as a matter of law that there was no deliberate indifference to a substantial risk of harm in the decision of prison officials to assign Oldham to a top bunk on April 16, 1993.

Thus, the court concludes that defendants are entitled to summary judgment on all of the claims arising from Oldham's assignment to a top bunk on April 16, 1993.[14] Oldham's motion for summary judgment on these claims must therefore be denied, and these claims dismissed. The court turns next to the question of whether defendants are further entitled to summary judgment on Count IV as to defendants against whom it is argue that only *respondeat superior* liability has been asserted.

### C. *Respondeat Superior Liability*

Defendants have moved for summary judgment in favor of defendants Thalacker, Chandler–Halford, and Farrington, on the ground that the complaint fails to allege action or inaction by them personally that caused a violation of Oldham's rights, and that *respondeat superior* liability will not lie against supervisors in a § 1983 action. Although asserting that these defendants were "deliberately indifferent" to his rights, Oldham does not, in either his resistance to defendants' motion for summary judgment or in his amended complaint, specify any actions of these defendants on which to base liability.

 *Respondeat superior* liability will not lie against supervisors under § 1983. *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993); *Howard v. Adkison,* 887 F.2d 134, 137 (8th

Cir.1989). The Eighth Circuit Court of Appeals has held that supervisors can incur liability under § 1983 in only two ways. *Choate,* 7 F.3d at 1376. First, they can incur liability "for their personal involvement in a constitutional violation." *Id.* (quoting *Fruit v. Norris,* 905 F.2d 1147, 1151 (8th Cir.1990)). Second, supervisors can incur liability "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Id.* (quoting *Howard,* 887 F.2d at 137, in turn quoting *Williams v. Willits,* 853 F.2d 586, 588 (8th Cir.1988)).

Because the court has concluded that all claims based on Oldham's assignment to a top bunk on April 16, 1993, must be dismissed, the court need only look at what, if any, allegations Oldham has made concerning the September 1993 incidents that demonstrate either the personal involvement of these specific defendants or their corrective inaction. In Count IV,[15] there are no allegations whatsoever that either defendant Thalacker or defendant Chandler–Halford did or failed to do anything related to the claim. The only allegations concerning Lt. Farrington are as follows:

> On 9/26/93 I saw Lt. Farrington and told him what had happend [sic] concerning this matter Lt. Farrington took a copy of may kite and said that he would take care of the problem and that I wouldnt [sic] have any more trouble getting Tylonal [sic] when I needed it. . . . I wish to point out that the only reason Lt. Farrington is named in this suit is because he is over (4) four of these c/o except for c/o Jone's [sic].

Amended Complaint, p. 10–11. Thus, the complaint explicitly asserts only *respondeat superior* liability against Lt. Farrington. Furthermore, the allegations of the complaint suggest that far from "corrective inaction," Lt. Farrington responded to Oldham's complaints about his ability to get his medication. The court concludes that the allegations of Count IV against defendants Tha-

13. The court recognizes that Oldham has made a claim similar, but not identical, to this in the other case consolidated with this one.

14. These are the claims the court has identified as Counts I, II, and III.

15. This Count is Oldham's "fourth cause of action."

lacker, Chandler–Halford, and Farrington assert only *respondeat superior* liability, and that § 1983 does not provide for such liability. These three defendants are therefore entitled to summary judgment in their favor on Count IV.

### D. Failure To Designate An Expert

Defendants assert as a final ground for summary judgment Oldham's failure to designate an expert witness. Defendants argue that Oldham cannot pursue a claim of deliberate indifference to a serious medical condition without expert testimony, citing *Crooks v. Nix*, 872 F.2d 800 (8th Cir.1989). Oldham responds that his treating physician, Dr. Steyers, is an expert, but Oldham has not specifically designated him as an expert witness.

■ The court notes first that *Crooks* does not stand for the broad proposition for which defendants have offered it. Rather than concluding that an inmate "must provide an expert to support his allegations that he had a serious medical need or that Defendant was deliberately indifferent to that serious medical need," as defendants have argued, Defendants' Memorandum, p. 4, *Crooks* actually holds as follows:

> We would agree that plaintiff has not produced any medical opinion, at least on the present record, that he was in need of a bone marrow transplant. Thus, instead of there being a difference of opinion, we find there exists no evidence of such need other than plaintiff's own uncorroborated statement. This allegation alone is not sufficient to support plaintiff's claim.

*Id.* at 804. Thus, *Crooks* says nothing about the necessity of expert medical testimony to establish a serious medical need or deliberate indifference; rather, it says that an unsupported allegation of a need for a specific treatment is insufficient to support a claim for such treatment. In this case, Oldham's assertion of a serious medical need is supported by the record, and is not based merely on his bald assertions. The record shows that Oldham had been prescribed the medication of which he was allegedly deprived in September of 1993.

■ Contrary to defendants' assertion, no expert testimony is necessary to establish a serious medical need. Rather, a medical need is "serious" if it is one "that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1992). The fact that one of the standards for "serious medical need" is what a layperson should recognize plainly obviates the need for expert testimony on the question. In this case, it appears further from the record that Oldham's medical condition had led a physician to prescribe medication for pain.

Neither does a determination of "deliberate indifference" require expert testimony. "Deliberate indifference" has nothing to do with an expert's evaluation; rather, "deliberate indifference" is a determination by the factfinder of the state of mind of the defendant based on the evidence, and looks to apathy or disregard on the part of the defendants based on their actual knowledge of a risk of harm or a serious medical need. *See, e.g., Brown*, 33 F.3d at 954; *Rellergert*, 924 F.2d at 797. Because no medical expert was required to support Oldham's Eighth Amendment claims, Oldham's failure to designate a medical expert is not fatal to his remaining claim. Defendants' motion for summary judgment on this ground must be denied.

### VI. CONCLUSION

Oldham's request for a restraining order and preliminary injunction must be denied on the basis of application of the *Dataphase* factors to the circumstances of this case. Although some of these factors weigh in Oldham's favor, the critical factor in this case, success on the merits, weighs against granting the injunction. Oldham has failed to present any evidence beyond his bald assertions that any of his legal materials were lost in the course of his transfers within the corrections system, or that IMR officials interfered with his legal mail. Furthermore, the public interest will not be served by issuing an injunction in this case, because adequate IMR policies already govern treat-

ment of prisoners' legal materials and prisoners' access to the courts.

Turning to the motions for summary judgment, the court concludes that, assuming that a medical restriction could create either a property or liberty interest, the medical restriction involved here did not create such an interest in Oldham's assignment to a lower bunk. The medical restriction was silent on the proper bunk assignment. Therefore it did not require a specific bunk assignment. Thus, Oldham cannot establish a Fourteenth Amendment violation as the result of his assignment to a top bunk on April 16, 1993. Defendants are therefore entitled to summary judgment on Oldham's Fourteenth Amendment claims arising from his bunk assignment.

Defendants are also entitled to summary judgment on Oldham's Eighth Amendment claims arising from his bunk assignment in April of 1993. Defendants did not show deliberate indifference either to Oldham's serious medical condition or to a substantial risk of harm as the result of the bunk assignment. Rather, defendants examined the medical restriction, but, because the medical restriction did not include a restriction to a lower bunk, it did not require a specific bunk assignment and did not provide any notice that assignment to a top bunk would present Oldham with a substantial risk of harm. Thus, defendants are entitled to summary judgment on, and Oldham's motion for summary judgment must be denied as to, his claims arising from his bunk assignment on April 16, 1993.

Defendants Thalacker, Chandler–Halford, and Farrington are further entitled to summary judgment on Oldham's claim arising from his inability to obtain pain medication during September of 1993. The complaint asserts only *respondeat superior* liability against these defendants, because it fails to allege any personal involvement of these defendants in the alleged violation of Oldham's rights or any corrective inaction in response to the alleged violation of his rights. However, defendants are not entitled to summary judgment on this claim on the ground that Oldham has failed to designate an expert witness on the issues of serious medical need or deliberate indifference. No such expert

testimony is required for determination of these issues.

Thus, Oldham's motion for partial summary judgment must be denied in its entirety, and defendants' motion for summary judgment is granted to the extent described above. This matter will therefore proceed to trial against the remaining defendants on Oldham's claims arising from his inability to obtain pain medication during September of 1993 and the additional claims now consolidated with the present action stated in case No. C94–0158.

**IT IS SO ORDERED.**