Howard A. CROOKS, Appellant,

v.

Crispus C. NIX, Warden, Department of Corrections, Director, Iowa City Medical Center, Appellees.

No. 88–1461.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 21, 1988.

Decided April 10, 1989.

Steven L. Nelson, Des Moines, Iowa, for appellant.

Suzie A. Berregaard, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, McMILLIAN and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

This is an appeal from an Iowa state prisoner, serving a life term, who in the

admission of the State suffers from one of the most severe ailments of all custodial inmates, to-wit, chronic granulocytic leukemia. The prisoner filed a pro se 42 U.S.C. § 1983 complaint on May 6, 1985, alleging the defendants demonstrated deliberate indifference to a serious medical need by denying him a bone marrow transplant on the grounds that the cost was too great and by failing to provide him with adequate or proper pain medication. After appointment of counsel and discovery, the district court granted the motion for summary judgment filed on behalf of the State defendants, Crispus C. Nix, Warden of the Iowa State Penitentiary, and Harold Farrier, the Director of the Iowa Department of Corrections. This order was entered on February 2, 1988.

 The district court found that the plaintiff's claim for damages *and treatment* was barred under § 1983 since the named defendants, i.e., the warden and the correctional director, could not be liable for the alleged wrongful treatment under the doctrine of respondeat superior. We of course have no disagreement with the abstract doctrine that agency principles cannot govern the defendants' liability under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). However, we feel this over-simplifies plaintiff's pro se complaint and fails as well to provide the broad, liberal reading to a prisoner complaint required under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). As the Supreme Court unanimously held in *Haines,* a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 520–21, 92 S.Ct. at 596 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See also Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

Plaintiff's pro se complaint named as defendants: Nix, the Warden, Farrier, the Director of Corrections, and the Iowa City Medical Center in Iowa City, Iowa. Examination of the pleadings show that the "Iowa City Medical Center" is the University of Iowa Hospital (University Hospital), whose doctors, under contract with the Iowa Department of Corrections, furnish physician services to the prison and who have provided diagnostic treatment and care to the plaintiff.[1] Plaintiff's complaint indicated he was refused a bone marrow transplant in April, 1984. It alleged he was refused proper medication for pain or a transfer to a facility where he could get proper treatment. The complaint also alleged that the disease has affected his hearing and eyesight. Furthermore, in answers to interrogatories propounded by the defendants, plaintiff was even more specific as to the defendants' alleged medical indifference.[2] Finally, plaintiff also filed a

---

1. The district court did not require the University Hospital to answer. Plaintiff does not raise this issue on appeal. In light of our ruling affirming dismissal of the claim relating to refusal of the bone transplant, we need not pass on this question.

2. Interrogatory number 1 is representative of this fact.
 INTERROGATORY NO. 1: State each and every date on which you claim your medical care at the Iowa State Penitentiary was inadequate, delayed and/or denied.
 ANSWER:
 Although the amount and severity of the pain and discomfort varies, I am in constant pain and discomfort from my leukemia and am being continually denied treatment. Since the denial is continuous, it is not limit-

ed to any particular date. In addition to the continuous denial of medical treatment, the following specific incidents can be recalled at this time:
a.) I have repeatedly requested a bone marrow transplant and have been denied same. I have been told that the expense is too great.
b.) May 23, 1984, I was given a pass to the Dental Department. I proceeded to Captain's office to get it signed but was informed the hospital was giving sick call to P.C.'s (protective custody) and to come back later. After this was over, I reported back and had my pass signed. When I reached the hospital, a guard told me my pass was postponed to a later date. As of May 19, 1985, I had still not heard from the Dental Department even though I have cavities which need to be filled.

more complete affidavit in response to the defendants' summary judgment motion.[3]

c.) In February and March of 1985, I requested medication for severe pain in my legs and was told by the prison infirmary that they could not give me any medication unless it was prescribed by Iowa City.

d.) As of February 2, 1986, I had not received a dental exam for almost two years and had requested an eye exam and new glasses to no avail.

e.) April 3, 1986, I had severe pain in my left hip at night. The prison was out of Tylenol. They gave me aspirin which I am not supposed to take because of my leukemia.

f.) April 12 and 13, 1986, I was denied Tylenol because there was none available in the cell house. Even after Dr. Roper said he would see to it that Tylenol would be delivered with my Inderal, it was not done.

g.) May 6, I was given an eye exam by Dr. Peck and explained that if I read for an hour or two, my vision would get blurry. Dr. Peck just stated that a person my age did not need to read that long and did not give me new glasses.

h.) July 6 and 7, 1986. I was on sick call but was not receiving proper pain medication.

i.) July 12, 1986. I had requested additional pain medication on Friday and the doctor said he would take care of me. All he did was renew prior pain medication which is only effective for about 2 hours. I have difficulty walking. If the pain wakes me during the night, I must suffer until the morning medication. The pain is very severe.

j.) April 8, 1986. I made sick call request due to pain in lower hip and leg which had begun on Thursday night and increased over the weekend. I received no relief.

k.) January 5, 1987. Severe pain in my neck, shoulder and arm give me such pain I was losing the use of my left arm. I received no relief.

l.) February, 1987. Pain in hip and leg so severe I couldn't stand it. Pain medication which was first given to me actually increased the pain. The pain in between medication is unbearable.

m.) February 18, 1987. I applied for sick call in the morning to get pain medication renewed. A nurse came to the cell and said it would be renewed. By noon the pain was terrible. I asked the man in charge of the cellhouse to call the hospital. They told him to give me Tylenol because I was already on pain medication. The pain was very severe but I received no relief.

n.) February 24, 1987—severe pain in neck and shoulder. When I went to the waiting room, I was told the doctor wouldn't see me.

o.) April 1, 1987—pain in shoulder and arm becoming worse. My pain medication had been mistakenly reduced too much. Pain medication was reduced on Friday. I could not go on sick call over the weekend. I was told to go on sick call Monday, Tuesday, and Wednesday. All I ever saw was a nurse at my cell. She said she would ask the doctor about the mix-up on my medication. I finally received the correct medication after making the sick call request on Wednesday.

p.) April 28, 1987—started having greater pain in neck and shoulder. On April 29, I put in for sick call in the morning. At 11:00 a.m. I was called over to doctor. I asked for increased medication for pain. The doctor would not give adequate pain medication. The amounts are too small to be effective. The pain is very great.

q.) May 4, 1987—pain in neck and shoulder. I requested increased pain medication and was denied.

r.) May 14, 1987—pain in neck and shoulder and pain getting worse in hip. Requested increased pain medication and was denied.

s.) June 3, 1987—requested renewal of pain medication. Dr. Mihal agreed to do so. Instead he cut the medication in half. Experiencing increased pain.

t.) June 8, 1987—again requested adequate pain medication for neck and shoulder. Received no relief.

u.) June 9, 1987—really started to hurt in left shoulder and arm and right hip around 2:00 p.m. I was told to put in sick call slip for next morning. The pain medication has been reduced and is not helping. The pain is increasing. I submitted a sick call slip for today but the nurse cancelled it.

v.) July 2, 1987. I was told by the nurse to go to sick call July 2 because no doctor would be available over the holiday. So, on July 2, I went on sick call to get medication renewed. Doctor said "they" would not let him renew it at that time. I ran out of medication, the hospital said I had to wait until Monday.

w.) July 7, 1982 [sic]. Pain is too much to tolerate. I requested increased medication. Request was denied. See attached comments from week of July 7.

x.) July 13, 1987—requested increased medication because pain is too great. Medication was reduced.

**3.** Plaintiff's Statement of Disputed Facts, filed in opposition to defendants' motion for summary judgment, includes the following statements:

3. As a result of the leukemia, Mr. Crooks is in constant pain and discomfort, although the amount and severity of the pain and discomfort varies.

\* \* \* \* \* \*

5. During the night, there is no provision for sick call at the penitentiary.

\* \* \* \* \* \*

7. On at least one occasion, Mr. Crooks has been forced to wait more than a day to receive any medical attention.

\* \* \* \* \* \*

10. Although the doctors have informed Mr. Crooks that he should not take aspirin because of his leukemia, Mr. Crooks has on

In their pleadings defendants state they have no personal control over the staff at the University Hospital. Additionally, defendants' pleadings state that they have delegated the care and treatment of prisoners at this penitentiary to Correction Medical Services (CMS), an independent contractor.

The district court found that the complaint merely reflected a difference of opinion concerning medical treatment and therefore held that defendants had not subjected plaintiff to cruel and unusual punishment. The district court acknowledged that a prison official who fails to exercise control over actions of subordinates may be liable. Nonetheless the district court ruled that in the present situation, because defendants had no direct personal control over CMS or the staff of the University Hospital, "[e]ven if plaintiff had been the victim of a deliberate indifference to a serious medical need defendants could not be held liable for constitutional wrongs committed by others."

In passing on a summary judgment motion the court is required to view the entire record to determine whether there exists a rationally based factual dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). We find such a factual dispute exists over the defendants' alleged refusal to provide adequate or proper pain medication to the plaintiff. *Cf. Lair v. Oglesby*, 859 F.2d 605 (8th Cir. 1988) (genuine issue of material fact existed as to whether prison psychiatrist, after receiving notice of adverse reactions by inmate to prescribed drug, continued to prescribe, order or permit additional injections of the same drug to the inmate).

There is no affidavit filed by any physician or medical director which contradicts plaintiff's need for pain medication. Defendants' reports from the University Hospital do not rule out such medication. On the contrary, Dr. Macfarlane's letter of January 14, 1985, simply stated, "[h]e should receive no medications containing Aspirin." On February 20, 1985, Macfarlane noted plaintiff's steadily rising white blood count (WBC) and pain in his upper left quadrant causing difficulty at night when lying on his left side and stated that "[w]e plan to initiate [8 mg. of] Busulfan [daily] in view of increased WBC and painful spleen." On March 6, 1985, Macfarlane noted "achiness" of leg bones and that "[t]he patient is to [be] observe[d] closely for petechiae, bleeding, fever, chills, sweats or other evidence of possible toxicity."

The State's primary defense, and the basis for its summary judgment motion, was that these particular defendants cannot be liable for the constitutional wrongs of the independent contractors because of the doctrine of respondeat superior. We think this blanket defense fails to adequately respond to plaintiff's claim of improper treatment.

■ Even though defendants have contracted with CMS to furnish medical services this does not provide absolute immunity against a prisoner's claim where prison policies are alleged to contribute to the denial of proper medical and dental care. Obviously if the alleged denial of medical care was based on an alleged wrongful diagnostic judgment of a physician, the warden or prison director, lacking professional medical expertise, would not be liable on agency principles for any constitutional wrong. This is true even though the independent

---

several occasions been given aspirin because there was no Tylenol available for him.

11. On numerous occasions, Mr. Crooks was not seen by a doctor even though he was in severe pain and needed treatment for the pain.

12. On occasion, Mr. Crooks would go on sick call several days in a row to obtain pain medication for the excrutiating [sic] pain he was suffering and would not be permitted to see a doctor to correct the prescription for pain medication.

13. Mr. Crooks' prescription for pain medication expired over the Fourth of July weekend in 1987 and he was not given any medical attention over that weekend, even though he had requested that the prescription be renewed prior to the holiday to prevent the pain he would inevitably suffer.

\* \* \* \* \* \*

17. During a portion of Mr. Crooks' term at the Iowa State Penitentiary, the prison did not have a medical director who was licensed to prescribe drugs in Iowa.

contractors or physicians are acting under "color of state law." *Cf. West v. Atkins,* — U.S. ——, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). On the other hand, as plaintiff points out, although the doctrine of respondeat superior does not apply to § 1983 cases, a § 1983 claimant may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct or control the actions of a subordinate who causes the injury. *Hahn v. McLey,* 737 F.2d 771, 773 (8th Cir.1984); *Pearl v. Dobbs,* 649 F.2d 608, 609 (8th Cir.1981).

■ Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished. *Estelle v. Gamble,* 429 U.S. at 103, 97 S.Ct. at 290. Although these particular defendants might not be responsible for money damages for wrongful treatment by a state doctor, they are subject to an equitable decree that treatment be furnished where needed. Furthermore where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment. *West v. Atkins,* 108 S.Ct. at 2259. On the contrary, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.*

■ We think the plaintiff's pleadings sufficiently allege inadequate prison policies or medical supervision which, if true, would result in these defendants being held liable just as if they had refused to deliver those services themselves. The duty to provide such services lies within the statutory[4] and constitutional obligations of the named defendants. In this sense the defendants have a nondelegable duty to provide medical care when needed.[5] Construing the present pro se complaint in a broad and remedial manner we find plaintiff has demonstrated the existence of a factual dispute as to defendants' liability sufficient to overcome defendants' motion for summary judgment.

■ We would agree that plaintiff has not produced any medical opinion, at least on the present record, that he was in need of a bone marrow transplant. Thus, instead of there being a difference of opinion, we find there exists no evidence of such need other than plaintiff's own uncorroborated statement. This allegation alone is not sufficient to support plaintiff's claim.

■ Since we are remanding plaintiff's other claim, we note that the last medical report from the University Hospital the district court received appears to have been in 1985. We think it was incumbent on the district court to have obtained an updated report on the plaintiff's need for medical treatment as of 1988 before it ruled on the summary judgment. Thus, a more current report should be supplied by the treating physicians before the district court resolves the remaining issues on remand. We deem this proper on remand, even though we hold that the district court properly ruled in dismissing plaintiff's claim for damages

---

4. A non-exhaustive list of the statutory duties imposed upon defendant Farrier, as Director of the Iowa Department of Corrections, can be found at Iowa Code § 246.108(1)(a)–(m) (1987). Included in this list is the duty to supervise the operations of the State's penal institutions, *id.* § 246.108(1)(a), as well as the duty to examine the institutions to determine if adequate care is being provided to the inmates. *Id.* § 246.108(1)(g).

5. We note that the present defendants, Farrier and Nix, consented to the entry of a Second Amended Consent Decree in the case of *McBride v. Farrier,* Civil No. 73–242–2 (S.D.Iowa, Mar. 6, 1987) (unpublished order). The purpose of that decree was to insure the provision of health care services in the Iowa prison system in an optimum and efficient manner, consistent with the legal obligation of the defendants. We note also that the decree imposes numerous responsibilities and duties on these defendants, in addition to those statutorily and constitutionally imposed, many of which the plaintiff argues have not been met. In light of our holding reversing summary judgment on the claim that defendants failed to provide proper or adequate pain medication, we feel that the proper forum for resolution of this issue is the district court on remand.

as to the need for a bone transplant. As we discussed, plaintiff's claim is stated in both legal and equitable form. He seeks future treatment, as well as damages for past denial of treatment. In doing so, however, we emphasize that plaintiff, to make a cognizable § 1983 claim, must allege more than medical malpractice; a prisoner must allege a constitutional violation of "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291.

Thus, we affirm the district court's dismissal of plaintiff's claim of deliberate indifference to serious medical needs based on the need for a bone marrow transplant. However, we reverse and remand for further proceedings plaintiff's claim of deliberate indifference to serious medical needs based on failure to provide adequate or proper pain medication.