Dionne v. Brodeur                    CV-94-125-JD  11/08/95
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE

Richard Dionne

     v.                                  Civil No. 94-125-JD

Paul Brodeur, et al.


                            O R D E R


     The plaintiff, Richard Dionne, has brought this pro se

action against the Commissioner of the New Hampshire Department

of Corrections and various administrators and doctors at the New

Hampshire State Prison ("NHSP") in Concord.  The plaintiff

alleges that the defendants have failed to provide him with

adequate medical care in violation of the Eighth Amendment and,

pursuant to 42 U.S.C. § 1983, seeks monetary and injunctive

relief.  Before the court is the defendants' motion for summary

judgment (document no. 56).


                          Background[1]

     The plaintiff, who is approximately fifty years old, is an

inmate at NHSP, where he has been incarcerated since 1986.  In

January 1987 and again in June 1990, the plaintiff was diagnosed

_____

     [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

with Hepatitis B. Further testing also revealed cirrhosis of the plaintiff's liver, as well as damage to his spleen and gall bladder. In 1991, the plaintiff was referred to Dr. Robert Cimis, a liver specialist at the Dartmouth-Hitchcock Medical Center. In May 1991, Dr. Cimis recommended that the plaintiff undergo experimental alpha interferon therapy for at least three months. In his recommendation, Dr. Cimis noted that the only other treatment for the plaintiff's potentially terminal condition was a liver transplant. Dr. Cimis expressed doubt that the plaintiff would be eligible for such a procedure. Plaintiff's Objection to Motion for Summary Judgment, Ex. A-17 (Letter from Dr. Cimis to Dr. Stefan Eltgroth, Senior Medical Officer, NHSP, May 6, 1991).[2]

In July 1991, following the administration of a battery of tests, Dr. Nathan Sidley, a board-certified psychiatrist and the director of the Department of Correction's division of medical and forensic services, asked Dr. Cimis to review his previous recommendations in light of the results. Dr. Cimis, in turn, recommended a "middle-of-the-road course" that did not mention

---

[2]In a letter to the plaintiff's attorney dated May 16, 1991, Dr. Cimis stated that a "[l]iver transplant is the only other therapy and I guess that is not considered feasible since [the plaintiff] has no resources and the cost for that therapy is around $160,000." Plaintiff's Objection to Motion for Summary Judgment, Ex. A-6.

2

alpha interferon treatment and included monitoring the plaintiff's enzymes "over the next few months." Appendix to Defendant's Memorandum of Law in Support of Summary Judgment, Ex. F. In August 1991, after learning about direct communication between the plaintiff and Dr. Cimis, Dr. Sidley urged Dr. Cimis to refer the plaintiff's questions to the prison medical staff. Plaintiff's Objection to Motion for Summary Judgment, Ex. A-46. (Letter from Dr. Sidley to Dr. Cimis, August 20, 1991).

In December 1991, Dr. Cimis examined the plaintiff and again recommended alpha interferon treatment, stating that "if we are going to try the alpha interferon, now is the time." Appendix to Defendant's Memorandum of Law in Support of Summary Judgment, Ex. I (Letter from Dr. Cimis to Dr. Eltgroth, December 16, 1991). In January 1992, the plaintiff signed an "informed request" in which he acknowledged that alpha interferon was still considered experimental for his condition, and began receiving alpha interferon therapy. The treatment was terminated after three months because the plaintiff apparently showed no signs of improvement. Plaintiff's Objection to Motion for Summary Judgment, Ex. A-24 (Concord Hospital History and Physical Exam Record, July 21, 1992).

In July 1992, the plaintiff was admitted to Concord Hospital to treat a sudden onset of upper gastrointestinal bleeding. His

3

discharge summary includes the opinion of a Dr. Scheinbaum that the plaintiff was not a candidate for a liver transplant.  Id., Ex. A-24.

In early 1993, the plaintiff initiated correspondence with the Deaconess Hospital in Boston, Massachusetts, in an effort to schedule an examination to determine his eligibility for a liver transplant.  After reviewing the records that the plaintiff had sent to the Deaconess, Dr. David Lewis responded in writing that in his opinion the plaintiff suffered from a "significant degree of liver disfunction."  However, Dr. Lewis also stated that he could not determine from the information that the plaintiff had provided whether the plaintiff's condition was severe enough to warrant a liver transplant.  Id., Ex. A-1.  (Letter from Dr. Lewis to Richard Dionne, February 5, 1993).  Accordingly, Dr. Lewis instructed the plaintiff to seek a referral from the prison medical staff for an evaluation for a transplant.  Id.  Dr. Lewis forwarded a copy of his reply to the plaintiff's correspondence to Dr. Sidley, and in a separate letter communicated to Dr. Sidley the hospital's inability to treat the plaintiff without a referral.  Id., Ex. A-2 (Letter from Dr. Lewis to Dr. Sidley, February 5, 1993).

On May 25, 1993, the plaintiff completed an "inmate request slip," seeking an MRI examination of his liver and a referral for

4

an evaluation in Boston with Dr. Lewis. Appendix to Defendant's Memorandum of Law in Support of Summary Judgment, Ex. O. On June 2, 1993, Dr. Sidley denied the request, stating, "I regret to inform you that after a review of your case, it has been concluded that a referral for liver transplantation is not indicated." Id. Dr. Sidley denied to elaborate upon this opinion after, on two separate occasions, an attorney representing the plaintiff requested a more complete explanation. See Plaintiff's Objection to Motion for Summary Judgment, Ex. A-11 (Letter from Alan Linder, Staff Attorney, New Hampshire Legal Assistance, to Dr. Sidley, June 14, 1993); id., Ex. A-12 (Letter from Alan Linder to Dr. Sidley, July 7, 1993). However, Dr. Sidley since has testified that a liver transplant would not be appropriate for the plaintiff given his "functional capabilities, his age, his hepatitis B, his diabetes, and his history of drug use." Affidavit of Dr. Sidley, June 13, 1995, ¶ 12. Dr. Sidley also has testified that recent quarterly medical evaluations have not revealed the need for the plaintiff to consult another liver specialist. Id. ¶ 11.

## Discussion

The plaintiff contends that the defendants' delay in administering alpha interferon therapy and their refusal to grant

a referral for an evaluation at the Deaconess constitutes willful indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment.  The defendants argue, <u>inter alia</u>, that the level of care provided to the plaintiff forecloses a finding of willful indifference, and that the plaintiff has no evidence to support his allegations of willful indifference.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  <u>Snow v. Harnischfeger Corp.</u>, 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting <u>Wynne v. Tufts Univ. Sch. of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), <u>cert.</u> <u>denied</u>, 113 S. Ct. 1845 (1993)), <u>cert. denied</u>, 115 S. Ct. 56 (1994).  The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the

6

plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), cert. denied, 112 S. Ct. 2965 (1992)). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). The plaintiff bears this burden even where, as here, he appears before the court pro se. United States v. Michaud, 925 F.2d 37, 41 (1st Cir. 1991).

Prison officials and doctors violate the Eighth Amendment by exhibiting "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993). Mere negligence is not enough to establish deliberate indifference. Estelle, 429 U.S. at 108. Rather, a prisoner must demonstrate that prison officials acted with a "culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (citing Wilson v. Seiter, 501 U.S. 294, 111 S. Ct 2321, 2324-25 (1991)). Such a state of mind may be manifested by a criminally reckless response to medical needs or by the denial

7

or delay of, or interference with, prescribed health care. Id. (state of mind requirement requires knowledge and disregard of an easily preventable and impending harm). Mere "disagreement about the proper course of treatment," even where prison doctors act negligently in devising a course of treatment, "does not rise to the level of a constitutional violation." Watson, 984 F.2d at 540.

The plaintiff has responded to the instant motion by submitting a variety of documents including correspondence and various medical reports. Consistent with Rule 56 and mindful of the plaintiff's pro se status, the court has reviewed the evidence without the benefit of a supporting memorandum. The undisputed facts indicate that the plaintiff's medical condition is serious and potentially life-threatening. Thus, the only issue to be resolved is whether the plaintiff has adduced any evidence from which it reasonably can be inferred that the defendants have acted or are continuing to act with a constitutionally culpable state of mind.

Considering first the plaintiff's allegation of delay in the administration of alpha interferon therapy, the court recognizes that Dr. Cimis recommended that the plaintiff undergo therapy as early as May 1991, and that the treatment did not begin until early 1992. However, the interval between Dr. Cimis's initial

8

recommendation and the beginning of the alpha interferon therapy cannot be characterized as a delay in administering prescribed health care. Rather, the undisputed facts indicate that Dr. Cimis recommended an alternate course of action in July 1991 in light of information that came to his attention subsequent to his initial recommendation. The defendants followed Dr. Cimis's advice on a "middle-of-the-road course" until Dr. Cimis concluded in December 1991, that the time was right to commence the experimental therapy. The plaintiff's conclusory allegations of a conspiracy to delay treatment through excessive "blood work" are not sufficient to undermine this conclusion.[3]

Similarly, the allegation that the defendants have acted and are continuing to act with deliberate indifference to the plaintiff's serious medical needs by refusing to schedule an evaluation for a liver transplant is unsupported by the evidence. The undisputed evidence indicates that over the last four years three physicians have concluded that the plaintiff is not a likely candidate for a liver transplant. Moreover, no doctor has suggested that the plaintiff should consult with another outside specialist at this time. The plaintiff has pointed to no

_____

[3]Because the plaintiff has adduced no evidence to suggest that the defendants delayed the administration of alpha interferon therapy, the court need not reach the issue of whether the defendants ever had an obligation in the first instance to furnish the plaintiff with an experimental treatment.

9

evidence beyond his own conclusory allegations that in any way undermines the defendants' medical conclusions or otherwise gives rise to an inference that the defendants have acted with a constitutionally impermissible state of mind.  See Crooks v. Nix, 872 F.2d 800, 806 (8th Cir. 1989) (plaintiff's uncorroborated statement that he needed bone marrow transplant insufficient to support claim of deliberate indifference to serious medical need for purposes of Eighth Amendment).  Accordingly, the court must grant summary judgment to the defendants.


## Conclusion

The defendants' motion for summary judgment (document no. 56) is granted.  The clerk is ordered to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

November 8, 1995

cc:  Richard Dionne, pro se
     Stephen J. Judge, Esquire