# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2027

_____

Beck, formerly known as David    *
Wayne Vanderbeck,    *
   *
         Appellant,    *
   *      Appeal from the United States
     v.    *      District Court for the
   *      District of Minnesota.
Eric Skon; David Crist; Christopher    *
Ceman, Dr.,    *
   *
         Appellees.    *

_____

Submitted: February 16, 2001
Filed    June 7, 2001

_____

Before RICHARD S. ARNOLD, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

David Wayne Vanderbeck (Beck) is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota, where he is serving a 360-month sentence for committing second degree murder. Beck appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 (Supp. IV 1998) action against defendants. Beck contends that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by failing to relocate him to a different cell, failing to provide him with a prescribed medical device, and conditioning his having needed

surgery on his execution of a release of liability. Because there is a genuine issue of material fact about whether the surgical consent forms were releases of prospective liability, as Beck contends, or merely forms authorizing treatment, we reverse the district court's order in part and remand for further proceedings.

I.

Beck suffered a gunshot wound on August 23, 1978, that left him with a bullet permanently lodged near his spine that affects his neural functioning. Beck began having pain, cramping, and numbness in his back and lower extremities in 1996. Beck's physicians determined that walking and climbing stairs were exacerbating his injury and recommended that prison officials relocate Beck to a cell that was closer to the cafeteria and infirmary to minimize further discomfort. Beck demanded that he be placed in cell hall D--the cell hall closest to the cafeteria--or be transferred to another penitentiary that housed a medical unit. The Stillwater nursing supervisor explained to Beck that the prison could not fulfill his specific relocation request because Beck did not meet the prison's criteria for cell hall D inmates; cell hall D was restricted to inmates with certain job assignments who comported with stringent behavioral standards. Furthermore, he was not diagnosed with an acute or terminal illness necessitating placement in a medical unit. Instead of relocation, prison officials offered to allow Beck to use a wheelchair or to have meals delivered to his cell. Beck refused both accommodations.

Beck also suffers from a right-sided hernia that was diagnosed when he was referred to Dr. Michael Tran in October 1997. Dr. Tran recommended that Beck undergo surgery to repair the hernia, but Beck refused to execute the requisite medical permit forms so the surgery was indefinitely postponed. As a temporary alternative to surgery, Dr. Tran recommended that Beck use a medical device known as a truss. A truss functions similarly to a girdle by holding a muscle wall firmly in place and stabilizing a hernia. Beck refused to be fitted for or to wear a truss.

2

Dr. Christopher Ceman began caring for Beck in January 1999. Dr. Ceman opined that Beck's hernia had appreciably worsened and that surgery was the desired course of treatment. Beck, however, still refused to sign the surgical permit forms, and his hernia remained unrepaired.

Beck filed his current action in May 1999 against Dr. Ceman; David Crist, warden at the Stillwater correctional facility; and Erik Skon, the assistant commissioner of the Minnesota Department of Corrections. In recommending that defendants' motions for summary judgment be granted, the magistrate judge concluded that "[n]othing in the record demonstrates that any Defendant was deliberately indifferent to Plaintiff's medical needs. . . . [T]he record indicates that Plaintiff has refused to undergo proposed treatment which would be beneficial to his complaints." (Report & Recommendation at 17.) The district court adopted the magistrate judge's report and recommendation and granted summary judgment to defendants over Beck's objections. Beck appeals, asserting that because genuine issues of material fact are present, summary judgment was inappropriate.

II.

The district court's grant of summary judgment is reviewed de novo. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). We reverse an award of summary judgment only if we find that a material issue of fact does exist or that the district court made an incorrect conclusion of law. See Fed. R. Civ. P. 56(c). "[W]e must take as true those facts asserted by the plaintiff that are properly supported in the record." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001). Beck contends that even if we fail to find a genuine issue of material fact, this case must be remanded regardless because the district court neglected to advise him as a pro se litigant how to properly respond to defendants' motions for summary judgment. We disagree. Although several of our sister circuits require a district court to provide particularized instructions to a pro se litigant at the summary judgment stage, we have not. Cf.

Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d. 852, 856 (8th Cir. 1996) (recognizing that pro se representation does not excuse a party from complying with the Federal Rules of Civil Procedure); Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993) (failing to allow pro se prisoner to disregard Federal Rules of Civil Procedure). Like any other civil litigant, Beck was required to respond to defendants' motions with specific factual support for his claims to avoid summary judgment. See Fed. R. Civ. P. 56(e) ("[An] adverse party may not rest upon the mere allegations or denials of . . . [his] pleading, but . . . [must], by affidavits or as otherwise provided in this rule, . . . set forth specific facts showing that there is a genuine issue for trial."); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986) (explaining that nonmovant must offer controverting affidavits or evidence from which a reasonable jury could return a verdict in his favor). Moreover, Beck is a frequent litigator in our court and understands the jurisprudential process.

"We look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting Anderson, 477 U.S. at 248). A claim under the Eighth Amendment, as applied to the states through the Fourteenth Amendment, must show both that the state action has denied the prisoner "'the minimal civilized measure of life's necessities,'" and that the state actors have shown deliberate indifference to the prisoner's medical needs. Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (holding failure to supply medical care constitutes an Eighth Amendment violation if it is the result of deliberate indifference to a prisoner's serious medical needs; allegations of "inadvertent failure to provide adequate medical care" are insufficient to establish culpability); Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (stating that denial of essential care violates the Eighth Amendment).

4

We have no doubt that Beck suffers from a broad range of physical complaints. He has, however, been seen in the prison infirmary at least sixty times for these complaints, and twenty-six of those visits were with Dr. Ceman during the period from January 11, 1999, to September 30, 1999. Multiple contacts with medical personnel do not necessarily preclude a finding of deliberate indifference, see, for example, Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991), cert. denied, 506 U.S. 836 (1992), but in this case, the record clearly reflects that prison officials have conscientiously attempted to meet Beck's medical needs and have continually been rebuffed by Beck's refusal to comply with recommended treatment. Prison officials offered accommodations to Beck, which were intended to minimize his walking such as the use of a wheelchair or to eat meals in his cell, but he refused both of these options. Prison officials repeatedly offered to fit Beck with a truss, but again he refused. Having carefully reviewed the summary judgment materials pertaining to these two issues and the offered care that Beck has received for them, we agree with the district court that Beck has failed to present a triable issue of fact evidencing a violation of his Eighth Amendment rights. Beck's disagreements with the prison medical staff about his care do not establish deliberate indifference and is not actionable. See Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (holding prison officials do not violate Eighth Amendment when, in exercising professional judgment, they refuse to implement inmate's requested course of treatment).

The issue of the surgery consent forms is a far more problematic matter. Dr. Ceman stated in an August 23, 1999, progress note that Beck would agree to have his hernia repaired, but "only if he didn't have to sign an informed consent and only if he could be put under general anaesthesia [sic]." (Appellant's App. at A243.) In a sworn reply to the defendants' motions for summary judgment filed in the district court, Beck steadfastly maintained that in order for his hernia to be repaired, the prison conditioned the procedure on Beck's release of all future liability that might arise from the surgery. Subsequent to this case being submitted to our court, defendants Skon and Crist filed a motion to supplement the record with sworn statements and

documents purporting to be substantially similar to those forms presented to Beck.[1] We are troubled by the absence of the consent forms in the summary judgment record. Although mere discomfort and inconvenience do not implicate the Constitution, see Whitnack v. Douglas County, 16 F.3d 954, 956-58 (8th Cir. 1994), if prison officials indeed conditioned a necessary medical procedure on Beck's release of liability, their action could establish a deliberate indifference to Beck's Eighth Amendment rights to basic medical care. See Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989) ("Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished."). Beck has had no opportunity to challenge the authenticity of these forms or to depose the affiants about them. Whether Beck will in fact be able to prove that defendants conditioned surgery on a total release of liability is another matter, but for purposes of this appeal, our concern is otherwise. Based upon the insufficiency of the record and the apparent conflicting sworn statements, summary judgment on this issue was premature.

## III.

For the forgoing reasons the decision of the district court is affirmed in part and reversed in part. Defendants' motions to supplement the record are denied. The case is remanded for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]In August 2000, Dr. Ceman filed a motion to supplement the record with a June 2000 physician progress note. We deny his request.