345 F.Supp.2d 1018 (2004)
John DASHLEY, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, INC., and James A. Gammon, Defendants.
No. 2:04CV00014DDN.
United States District Court, E.D. Missouri, Northern Division.
September 21, 2004.
*1019 John Dashley, Moberly, MO, Pro se.
John J. Treu, Correctional Medical Services, James R. McAdams, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, Deborah Bell Yates, Attorney General of Missouri, St. Louis, MO, for Defendants.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before this court on the motion of defendant James A. Gammon to dismiss (Doc. 18) and the motions of defendant *1020 Correctional Medical Services (CMS) to dismiss (Doc. 13) and for summary judgment (Doc. 20). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I. PLAINTIFF'S ALLEGATIONS
Plaintiff John Dashley is an inmate of the Missouri Department of Corrections (MDOC) at the Moberly Correctional Center in Moberly, Missouri. (Doc. 1.) Dashley's complaint was filed on March 15, 2004. Dashley seeks monetary compensation for the allegedly unconstitutional failure of the defendants to respond to his need for medical attention. Originally he sued defendants C.M.S. (Correctional Medical Services), Superintendent James A. Gammon, COI Garcia, and COI John Doe. By order dated May 17, 2004, District Judge Stephen N. Limbaugh dismissed the claims against Garcia and Doe as frivolous. (Doc. 7.) The action proceeded against defendants CMS and Gammon.
Dashley alleges CMS, in its capacity as provider of health services to MDOC inmates, and Gammon, as the Correctional Center Superintendent, are responsible for providing him with adequate health care. Dashley alleges he suffers 71% body disability due to a low back injury, as determined by an Administrative Law Judge. (Doc. 1 at unnumbered 6a.) He further alleges that defendants knew of his back injury, yet he "was forced to work by prison staff...." (Doc. 1 at unnumbered 6a.) After engaging in this work, Dashley alleges he reinjured his back, and did not receive x-rays, follow-up physician care, or adequate pain medication as appropriate. (Doc. 1 at unnumbered 6a-b.) Dashley asserts these actions caused him unbearable pain, aggravated his existing back condition, and caused him undue suffering. (Doc. 1 at unnumbered 6a-d.)
Moreover, Dashley alleges CMS failed to provide him with adequate assessment and treatment, follow physician's orders with respect to his care, and maintain adequate medical records. (Doc. 1 at unnumbered 6a-b.) Due to CMS's actions, Dashley believes he suffered further injury, pain, and suffering in violation of his Eighth Amendment rights. (Doc. 1 at unnumbered 6a-b.) CMS denies all Dashley's allegations and contends Dashley failed to state a claim under Fed.R.Civ.P. 12(b), his complaint is frivolous, CMS has qualified immunity, and plaintiff failed to exhaust all administrative remedies. (Doc. 12 at unnumbered 1-2.)
Regarding Gammon, Dashley alleges Gammon violated his Eighth Amendment rights by failing to provide adequate medical treatment, developing policies of indifference to inmate medical care, and failing to intervene in the actions of others. (Doc. 1 at unnumbered 6c-d.) Dashley asserts Gammon's actions resulted in an "unnecessary and wanton infliction of pain." (Doc. 1 at unnumbered 6e.)

II. DISCUSSION
The court, on a motion to dismiss, must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir.2004); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir.2003). Such a motion should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. Holden Farms, 347 F.3d at 1059. The court need not, however, accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if *1021 they are couched as factual allegations. Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir.1997). However, pro se prisoner complaints are held to even "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

A. CMS's Motion to Dismiss
In his complaint, Dashley alleges pursuant to 42 U.S.C. § 1983 that CMS acted with deliberate indifference to his medical needs and is therefore responsible for unnecessary and wanton infliction of pain in violation of the Eighth Amendment. (Doc. 1 at unnumbered 6a-b.) In its motion to dismiss, CMS argues Dashley does not establish the necessary causal link between its actions and the alleged unconstitutional treatment, because Dashley fails to allege any CMS policy or custom responsible for plaintiffs alleged injuries. (Doc. 13.)
To invoke a claim under 42 U.S.C. § 1983, a plaintiff is estopped from relying on the doctrine of respondeat superior. See Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir.1990) ("It is well settled that respondeat superior cannot be the basis of liability in a § 1983 action."); Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.1989) ("It is well settled that the doctrine of respondeat superior is insufficient to allow recovery in a § 1983 action.").
Absent respondeat superior, to establish § 1983 liability of a private company, a plaintiff must allege facts sufficient to show the company was acting under color of state law and engaging in its own unconstitutional policies. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("To state a claim under § 1983, a plaintiff must... show that the alleged deprivation was committed by a person acting under color of state law."); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir.1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies.").
An entity acts under the color of state law when it can be characterized as a state actor and deprives a plaintiff of rights secured by United States laws or the Constitution. West, 487 U.S. at 49, 108 S.Ct. 2250 (the party charged must be a state actor to bring a § 1983 claim); Ottman v. City of Independence, 341 F.3d 751, 756 (8th Cir.2003) (quoting 42 U.S.C. § 1983) ("To establish a section 1983 cause of action, [plaintiff] must establish... the deprivation was caused by a person or persons acting under color of state law.").
In this case, CMS allegedly acted pursuant to a contract with the MDOC to deliver health care to Dashley and other inmates. (Doc. 1 at unnumbered 6a.) Thus, its actions can fairly be characterized as "under color of state law." See West, 487 U.S. at 57, 108 S.Ct. 2250 ("[Respondent's delivery of medical treatment to [inmate] was state action fairly attributable to the State, and that respondent therefore acted under color of state law for purposes of § 1983."); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir.1989) ("Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished.").
Regardless of its status as a state actor, CMS contends that plaintiff did not allege any unconstitutional policy or custom for which it is liable. (Doc. 13 at unnumbered 1-4.) A "policy" is "a deliberate choice of a guiding principle or procedure made by... [an] official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir.1999); see also Ware v. Jackson County., 150 *1022 F.3d 873, 880 (8th Cir. 1998). In contrast, an actionable "custom" is
(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3) That plaintiff was injured by acts pursuant to the governmental entity's custom....
Jane Doe A. v. Special Sch. Dist, 901 F.2d 642, 646 (8th Cir.1990); accord Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir.2003).
In the case at bar, Dashley alleges CMS knew an Administrative Law Judge determined he was 71% disabled because of a back injury, he was further injured due to forced work by prison staff, he was not examined by a physician or x-rayed until 4 to 5 days after the injury, he was denied access to an outside specialist, and he had to wait 5 months before he was examined by another physician and had his x-rays reviewed. (Doc. 1 at unnumbered 6a.) Dashley further alleges he was not given adequate pain treatment, not provided his prescription back brace, not provided a cane within a reasonable amount of time, and that CMS failed to correctly document a physician's order that he refrain from work, resulting in him receiving a written violation for disobeying a work order and continued re-injury of his back. (Doc. 1 at unnumbered 6b.)
Accepting all Dashley's allegations as true and drawing all reasonable inferences in his favor, the court cannot discern any allegation of custom or practice for which CMS is liable under § 1983. Doe ex rel. Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir.2003) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."). Dashley describes discreet actions taken by CMS employees, without any ratiocination of how these instances relate to an official CMS policy or practice. Moreover, given the inability to rely on respondeat superior, Dashley is foreclosed from asserting liability for any alleged indifferent act committed by a CMS employee. Therefore, the pleadings are not sufficient to show actions under color of state law based on an unconstitutional policy or custom with the sufficiency necessary to maintain a § 1983 claim. See Messimer v. Lockhart, 702 F.2d 729, 732 (8th Cir.1983) (reversing decision granting motion to dismiss because the plaintiffs were alleging violative policy decisions and not complaining about mere isolated instances).

B. Gammon's motion to dismiss
In his complaint, plaintiff alleges Gammon denied him adequate medical treatment in violation of his Eighth Amendment rights. (Doc. 1 at unnumbered 6c.) In his motion to dismiss, Gammon asserts Dashley failed to exhaust administrative remedies against him, thereby foreclosing Dashley's ability to file suit. (Doc. 18.)
Under 42 U.S.C. § 1997e, a prisoner cannot bring a § 1983 action with respect to prison conditions without first exhausting his administrative remedies. 42 U.S.C. § 1997e(a) (2000) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Kozohorsky v. Harmon, 332 F.3d 1141, 1143 (8th Cir.2003); cf. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, *1023 notably money damages, exhaustion is a prerequisite to suit.").
The Missouri Department of Corrections inmate grievance procedure consists of four steps. See Certified Inmate Grievance Procedure (IS 8-2.1). First, an inmate may file an Informal Resolution Request (IRR) within fifteen days of the incident at issue, and a staff response is due thirty days after filing. Id. Second, if the inmate is not satisfied with the IRR response, he or she may file an Inmate Grievance form [IGF] within five working days of the inmate's review of the IRR response. A staff response is due thirty days after filing. If no response is received within that time, the inmate may request an Inmate Grievance Appeal form. Id. Third, if the inmate is not satisfied with the grievance response, he or she may file an appeal within five working days of the response. Id. Fourth, if the inmate does not obtain a satisfactory response to the appeal, he or she may file a second appeal. Id.

Smith v. Stubblefield 30 F.Supp.2d 1168, 1174 (E.D.Mo.1998); see also, Foulk v. Charrier, 262 F.3d 687, 694 (8th Cir.2001).
In the instant case, the MDOC received Dashley's IRR on November 19, 2001, asserting the medical unit was acting with deliberate indifference to his medical needs. (Doc. 18, Ex. A. at unnumbered 10.) On December 13, 2001, the medical unit responded, detailing his medical treatment and his work status. (Doc. 18, Ex. A. at unnumbered 11.)
On January 3, 2002, the MDOC received an Offender Grievance form, alleging the medical staff continued to not meet his medical needs, he was forced to work despite difficulty walking and standing, causing his condition to deteriorate, and that his delay in care was inexcusable and negligent. (Doc. 18, Ex. A. at unnumbered 7.) On January 29, 2002, Dr. Hampton responded, acknowledging he examined Dashley on January 28, 2002 for complaints of back pain. Because Dashley stated he had no improvement, Dr. Hampton was going to make an orthopedic surgeon referral and increase his pain medication in the interim. (Doc. 18, Ex. A. at unnumbered 8.)
On February 13, 2002, MDOC received Dashley's first Offender Grievance Appeal, stating that he did not feel his grievances were adequately answered, that he believed the Superintendent was supposed to answer his grievance and not one of the physicians already negligent in his care, he would hold everyone liable for failing to act when it was determined his condition had worsened, and that he was being "made to suffer so long." (Doc. 18, Ex. A. at unnumbered 5.) On August 17, 2002, the Regional Administrator, apologizing for the delayed response, denied the appeal, stating that medical records and investigation did not support Dashley's allegations. (Doc. 18, Ex. A. at unnumbered 6.) Moreover, the Regional Administrator found that Dashley received appropriate care and there was no evidence of delay or indifference. (Doc. 18, Ex. A. at unnumbered 6.) The Regional Medical Director, a physician, reviewed the response. (Doc. 18, Ex. A. at unnumbered 6.)
On August 23, 2002, MDOC received Dashley's second appeal. He alleged it took 6 months to receive a response to his first appeal, which is outside the 180 day period the rules allow for completing the 4-step process. (Doc. 18, Ex. A. at unnumbered 2.) Moreover, he asserts not receiving his prescribed back-brace, he was not put on "lay-in" forcing him to refuse a work assignment, which ultimately ended in him being "written-up." (Doc. 18, Ex. A. at unnumbered 2.) Lastly, he alleges the medical care was beyond negligent and deliberately indifferent, the medical *1024 records were in disarray, and inmate injuries worsen during delayed receipt of medical care. (Doc. 18, Ex. A. at unnumbered 2.)
On November 12, 2002, the Central Office Legal Department for the MDOC responded to Dashley's second appeal. His appeal was denied after a review of all pertinent documentation, finding his grievances were adequately addressed in previous responses and no further action was required. (Doc. 18, Ex. A. at unnumbered 3.)
Gammon's assertion that Dashley failed to exhaust his administrative remedies against him is persuasive. The only mention Dashley makes of Gammon is in his first appeal when he asserts that the superintendent is supposed to respond to his grievances, not the medical unit.[1] Therefore, Gammon received no notice through the process that Dashley was specifically grieving against him, as opposed to the medical staff. See Johnson v. Jones, 340 F.3d 624, 626-27 (8th Cir.2003) ("Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").
Moreover, as discussed in the context of CMS's motion to dismiss, the doctrine of respondeat superior is not available when suing a prison administrator under § 1983. See Givens, 900 F.2d at 1233.
Absent notice in the grievance process, it cannot be said Dashley exhausted his administrative remedies with respect to his claims against Gammon. Burton v. Jones, 321 F.3d 569, 574 (6th Cir.2003) ("[A] prisoner must administratively exhaust his or her claim as to each defendant associated with the claim...."); Smith v. Duke, 296 F.Supp.2d 965, 967 (E.D.Ark.2003) ("Under 42 U.S.C. § 1997e(a), dismissal for failure to exhaust administrative remedies is mandatory.").
For these reasons the motions of defendants to dismiss are sustained. An appropriate order is issued herewith.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the motion of Correctional Medical Services, Inc. to dismiss (Doc. 13) is sustained.
IT IS HEREBY FURTHER ORDERED that the motion of James A. Gammon to dismiss (Doc. 18) is sustained.
IT IS HEREBY FURTHER ORDERED that the motion of Correctional Medical Services, Inc. for summary judgment (Doc. 20) is denied as moot.
IT IS FURTHER ORDERED that this action is dismissed with prejudice.
NOTES
[1] The matter of who should respond to Dashley's grievances and whether the process was complied with in the prescribed time period is not asserted in Dashley's complaint and is not necessary to determine Gammon's motion to dismiss. Therefore, the court will not address these matters further.